and before we proceed, I think both of you have appeared before the appellate court on numerous occasions. We will give each one of you approximately 15 minutes to present your arguments. And from that, Ms. Moran, you may save out some time for rebuttal. So why don't both of you step up, identify yourselves for the record, and then we will proceed. Good morning, Your Honors. My name is Rachel Moran and I represent the appellant Mark Conley. Good morning. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. Good morning, Ms. Moran. All right. Ms. Moran, you may proceed. Good morning, Your Honors, and may it please the court. I am Assistant Appellate Defender Rachel Moran on behalf of Mark Conley. May I please reserve three minutes for rebuttal? Yes. Thank you. Mr. Conley raised three issues in his brief. I intend to focus on issue three, but I'm of course happy to answer questions on the rest. Your Honors, every criminal defendant has a right to a fair trial by a jury properly instructed on all relevant law. Mr. Conley did not receive this. His jury received an incomplete instruction on a critical issue in the case, whether the child complainant actually made numerous alleged statements to doctors that implicated Conley in the charged crimes. The statements at issue were all hearsay, and the complainants testified at trial that they did not remember making the statements. Hearsay, of course, is ordinarily inadmissible as unreliable, but the legislature has carved out an exception for child complainants in sex cases. Could I interrupt you? One thing about these statements. Now, do you, I'm not sure I understand the time frame here, but the, it appears that in 2001, or beginning before that, but about 2001 is when both of these children were taken to the hospital. They made statements regarding the offenses, and so that's when the actual outcry or statements were made in these victim-sensitive interviews, correct? Correct, Your Honor. The abuse is alleged to have happened any time between 1996 and late 2000. And what, or something, or 2000? December of 2000 is the last possible date for the. What was the time frame? He was arrested in 2006? Yes, Your Honor. Was he out, what was, I'm not sure, I didn't get that from the reading of things. Your Honor, it's actually. Time lag. I'm not sure the jury would have gotten it either. No, I don't think they did. I'm just saying, you know, what is your understanding? Because they testified in almost 10 years later, so it's kind of understandable that they may not have remembered things that they said to doctors from 10 years prior. That's true, Your Honor. The time lag, it's a little bit unclear, but there was a police investigation shortly after these statements, which the statements at issue were made in February and March of 2001. There was a police investigation. The detective ultimately could not locate Mr. Conley. He was, it appears to be, in Chicago for that entire six-year period. There's no evidence that he fled the jurisdiction. I didn't think so, but I was just curious. So then, was he actually arrested sometime in 2006? He was arrested in 2006 because police, there was an active investigative alert for him, and police stopped him simply because he was walking in the middle of the street in traffic. The police officer stopped him then, asked for his identification, realized that there was an active alert for him, and then took him into custody at that point. And then the trial didn't occur until 2010? That's correct, Your Honor. There were a number of issues pertaining to Mr. Conley's desire to represent himself. There was a change of judges. There were many motions filed. So there was, again, another significant delay. The trial occurred in May of 2010. So sometimes, you know, there's cases where the children would indicate that they don't remember what they said because they're, you know, tender age maybe, like a six-year-old who might not remember saying something. Or maybe they never said it. That's possible, too. But here we have people that are, when the trial actually takes place, they're 20 and 17 or 20 and 18? 21 and 17. And they basically said they couldn't remember statements they made about 10 years before, which is sort of a completely different situation than some of these other situations where you'll see a statement, I don't remember saying that or, you know. Do you know what I mean? I do, Your Honor, and that's true. That is more relevant to the portion of the jury instruction that the jury did receive, which is what weight to give to the alleged statements and the fact that the complainant testified at trial. They essentially had no recollection or very little recollection of, even the interviews at all, they had some recollection, but none of the statements. The doctors also didn't remember the statements. Right. So there's a good indicator that what we have here is not really a situation where perhaps the statement was never made, but that memories have faded over a significant period of time. Because these are, you know, these are doctors, physicians who prepared notes at the time, recorded the statements, and had no specific recollection. I would respectfully disagree, Your Honor. That's certainly a conclusion the jury could reach, but it's also, there's also evidence that no one took verbatim notes at the time of the statements. And that's very crucial here, because we do have a very long lapse in time, which is not really attributable to anyone. It's no one's fault. But at the time of the trial, no one can remember what was said, and that both of the doctors admitted that verbatim notes were not taken. And in fact, Dr. Epstein, who conducted the victim-sensitive interviews of both complainants, testified that with respect to the interview of ML, which most of the charges against Conley are pertaining to ML, the note taker in that case did not do what he was supposed to do. He was supposed to take verbatim notes, and he did not. And Dr. Epstein testified that it was clearly not as it was supposed to be, the notes of that interview. And that's very relevant to, there's no question that the interviews took place and that some statements were made, but the particular statements are pretty crucial here, and that's what we don't have. We don't have evidence of exactly what was said, and that's why the jury should have been instructed that it was up to them to determine whether the specific statements were made. But they were instructed according to the IPI, it's just that the bracketed portion was missing that says whether the statements were made. Whether the statements were made and if so. Let's get to what I think is probably crucial here. There's a case out there, People v. Sargent. Yes. It was essentially reaffirmed just a few days ago, but it really wasn't reaffirmed on the issue here. That's correct. But in your brief, you don't even discuss that case. Now this case is here on the claim that we should review the error under plain error. Second prong. Yes, two answers to that. All right. I'm curious. The first is that Sargent did address IPI 11.66, which is at issue here, but no one in Sargent ever contested the missing portion of the statements at issue, of the instruction at issue here, whether the statements were made and if so. What the defendant in Sargent alleged is that the jury should have received the instructions so that it could be allowed to weigh the credibility of the statements and told how to do that. The jury was, the defendant never alleged that it was an error, that it did not receive the instruction, that it was allowed to determine whether the statements were made. So Sargent's a little bit, although it does address the same jury instruction, it's not really on point as far as the legal analysis at issue. So do you think that was something that didn't need to be discussed after the state's response brief relied heavily on Sargent to say that this doesn't fit within the second prong of the plain error rule, that this isn't really a fundamental right, this particular instruction? You don't think that that was something we might want to have heard from you before you came here today? Well, I apologize if that's the case, Your Honor. Well, I do think it's something that would have needed to have been discussed because it says this is not a fundamental right. So are you saying it is a fundamental right when the bracketed portion is missing? Yes, Your Honor. All right. And People v. Terman is the authority for that. And that was decided after Sargent by this Court just last year. Right, but Terman involves a defendant's statement, and there were other errors in that case, were there not? There were other errors in that case, Your Honor, but this Court in Terman held that the failure to give the bracketed portion of the instruction at issue in this case was plain error under the second prong and denied the defendant a fair trial. And that is our contention here. As far as the fact that Terman addressed the defendant's statements, and in this case we're discussing a witness statement, if anything, it is more important to give the instruction when a witness's statements are at issue. Why is that? I would think that it's much more important that the instruction be given in the case of a defendant's statement. Your Honor, the bracketed portion of the instruction must be given, according to the committee comments, unless the defendant admits that the statements were made. And it's easier for a defendant to do that, or to deny that the statements were made, when we're talking about a defendant's own statements, because he can. He has the ability to take the stand and either admit or deny the statements. Here we're talking about witness statements that were made essentially in private, where the defendant certainly had no opportunity to be present for them, and he couldn't have affirmatively denied that the statements were made, because he had no witnesses he could have called. He certainly couldn't take the stand and say he had no personal knowledge about whether the statements were made. You know, the instruction in Sargent, a couple of things that the Court discusses. One, there was a hearing under 115.10, which we have here. There was a hearing to determine the reliability initially of these statements. Yes, Your Honor, not by the judge who presided over the trial. No, but nonetheless, does that matter, that some other judge did this before the judge? It's not an issue we're raising, Your Honor. All right, okay. So, and then they point out in Sargent that the IPI-102 was given, which tells the jury, we have both here, that tells the jury that they are the sole arbiters of the credibility of witnesses. That actually emphasizes that. Pardon me? That is exactly why Sargent is not on point. Sargent discussed the comparability of IPI-1.02 with the second half of IPI-11.66. But in this case, we had both. Now, that instruction essentially tells the jury that they are the sole arbiters of the credibility of witnesses. Do you think that that doesn't explain that they can decide whether to accept or reject testimony of anyone they want? Your Honor, if that was enough for the IPI, then the bracketed portion would be superfluous. Well, actually, I'm not really sure. I do know this. The statute that directs the, that surrounds this 115 says what the instruction must say. Now, neither of you discuss it. But what it says is that the jury shall be advised that they have the right to determine the weight. There's nothing in there about whether a statement was made. The statutory directive does not say what either one of you says it says. That's true, Your Honor. However, the case law indicates that the instruction is present. It is in the pattern instruction. Yeah, I think the instruction gives more than what the statute ever envisioned. But the real question here is whether the failure to give the bracketed portion really amounts to a structural error, fundamental right in this particular case. Your Honor, the state hasn't contended that it must be a structural error. No, but fundamental right, whatever. Yes. They have contended that Sargent pretty much does resolve this. Now, both of you have gone off on this other issue of whether or not the bracketed portion amounts to, you know, a fundamental right. And you've cited Terman, and they've cited Richmond, and Echols, and so. Your Honor, Terman is the only case to address the bracketed portion of 11.66, and it found that it was a fundamental right. No other case has done that. True. Richmond addressed the bracketed portion of the corresponding jury instruction, 3.0607. And you're saying Sargent doesn't really dispose of this because it didn't specifically address the bracketed portion. Exactly, Your Honor. And I apologize if I did not make that clear in the reply brief. However, that is our position here today. Sargent does not dispose of it. And this Court in Terman also did not find that Sargent disposed of the issue. Well, really the issue in this case is a different instruction. It's about witness testimony. There were two instructions telling the jury essentially. I mean, you may disagree, but the statute requires that the jury be told that they are to consider the weight. It is for you to determine what weight should be given to the statements. I mean, that's what the language of the statute requires. And this was actually what was given. Your Honor, if I may just close with this. Justice Hall, in her concurrence in Eccles, pointed this Court back to the plain language of the IPI instruction and said that prior case law as well as the majority here pays too little heed to the actual committee comments. Justice Hall also went on to note that the committee's note regarding the bracketed phrase was not in the nature of a recommendation, but it was in the nature of a requirement. The Supreme Court has designated to the IPI committee the determination as to what those instructions should contain. And here it does indicate that the instructions should contain the language whether the statements were made and if so. The first step in plain error analysis is determine whether error occurred. And here the State, there's really no argument that Mr. Conley admitted that the statements occurred. He did not. He cross-examined thoroughly on it and he introduced evidence through the cross-examination of the doctors that they did not remember exactly what statements were at issue. It's particularly relevant when we're discussing things like the penetration count because the State relies heavily on the doctor's use of the word in when it's really, when ML did not even testify to that at trial and when the doctor admitted that she did not take verbatim notes and she's merely relying on summaries from 10 years earlier. When you look at the instruction itself, the bracketed stuff, it seems to me that that's, you know, this seems like that's optional that applies in certain circumstances. And that circumstance would be when there's evidence that the statement was not made. And I think the point that Justice McBride questions earlier, this is not a question where there's a denial that the statements were made, but where children who may have given a statement years earlier said they don't remember giving a statement. Isn't that the difference in this case and the case that you cite? Your Honor, what the instruction actually indicates is that it must be given unless the defendant admits that the statement occurred. But how could he? I saw it. I know in the other instruction. This is a different instruction. How could, you know, if he's not in the interview, as you stated earlier, there's no way for him to admit something. The question is whether or not there's evidence here that disputes that a statement was made. And here it is undisputed by several people that the statement was made. I would disagree with that, Your Honor. Actually, he's not in the interview. That's the very point. He's not in the interview. He's unable to introduce affirmative evidence that the statements were not made. If Your Honor followed the line that if the instruction, the bracketed portion of the instruction were only tendered when the defendant is able to admit or deny it himself, then it would be never, it would virtually never be tendered in the case of witness statements. What's more relevant is that. Sometimes witnesses deny they made the statement. That's. And then they, that instruction would apply then. But here they say we don't remember, we were 10 years ago. It's true, Your Honor. What Mr. Conley is relying on is the fact that they, that nobody remembered it and that the doctors admitted that they did not take necessary, they did not take verbatim notes. And when you're talking, so we're not contesting that statements were made, but that the specific statements the state relies on for proof, particularly of count one against ML, alleging anal penetration, that that particular statement was made. That actually is, there is affirmative evidence by virtue of the testimony on cross-examination of Dr. Grohl and Dr. Epstein that the statements may not have been made. You know, in Sargent, which you think is completely distinguishable, in the Sargent case, that, that jury wasn't even given the instruction. Completely missing. And they said this is not a fundamental right for purposes of the Plain Air Rule. And I just don't think you can read this to say, oh, they were only talking about, they were talking about the whole instruction being missing. You're talking about a bracket. So I don't really see how you really get past Sargent. Termin is not, we are bound by Sargent. This is a Supreme Court statement about this particular instruction. And in that case, they said when the whole thing was missing, the whole thing, not the bracketed portion you're talking about, when the whole thing was missing, this is not, this does not amount to plain air under the second prong. And that's the only prong you've relied on. Correct? Your Honor, I cannot disagree with this Court's reading of Sargent, except to point out that the defendant in that part never contested, never argued that the failure to tender that portion of the instruction was error. Okay. All right. All right. Thank you. Yes. Ms. Mahoney? Good morning. Again, Janet Mahoney on behalf of the people of the State of Illinois. You are absolutely correct in your reading of Sargent. When the entire instruction was missing, the Court still didn't find that it was a fundamental right had been violated. Here we're only talking about a portion of it. And if an entire instruction is missing and a fundamental right hasn't been violated, then certainly when a portion is missing, there is no way that you could find that a fundamental right was violated. Well, what about, though, Ms. Moran's statement that in that case, there was no real challenge to this particular paragraph? What is the point of this bracketed material? Well, contrary to what the reply brief says, I did not concede that the committee notes for 3.06, 3.07 applied here. It was just as a form of guidance, as something that was similar. But it is interesting that that same comment is not in 11.66. The committee did not include the same committee comment that was in 3.06 that applies to dependent statements here. So what is the point of the bracketed language here? Certainly not as important as it is when we are dealing with a dependent statement. So you would suggest that whether this bracketed portion regarding the IPI as to a dependent statement is more significant than for a witness statement? Absolutely. Why would you say that? Because you're dealing with a dependent statement, which is more damaging than just a witness statement. And what about the defendant's basic right not to have to testify, not to have to present any evidence, and whether he's made a statement or not? He does not need to take the stand in order to present some evidence he didn't make the statement. And the cases are clear about that. Correct. But as the concurrence in Richmond said and in Echols said, it needs to be more than cross-examination about did you video record it, did he make a handwritten statement, which is basically the kind of cross-examination that was done here. Do we really have to get into that issue in light of Sargent? We actually do not. And in the Turman case, they found that the evidence in that case was also closely balanced. So it's almost as if they said closely balanced and, by the way, a fundamental right. I don't believe that the analysis was complete on that because they had already found that it was closely balanced. What are the fundamental rights that have been discussed in the cases regarding plain air? What are they? Do you recall offhand? I mean, it's not really discussed by the public. No, it's not discussed, and I should recall them offhand. I should, too, but I can't. I thought you might be able to help me out. But I believe it has to do with did it affect the entire trial process as opposed to one part of this that doesn't deal with, like, a defendant's right not to testify. This is a witness who actually did not say that they didn't make the statement. You were correct in saying it wasn't that the statement was never made. Their memories faded. And that goes to the weight, not as to whether they made the statement or not. Nobody got on the scan and said they didn't make a statement. They just said, our memories have faded a little bit. But to be quite honest, the basic information that was introduced was basic, and you didn't really need more than that. You didn't need to know exactly where in the house the event occurred, what time, what day, what was the lighting like. Wasn't there another issue involved in Terman besides the failure to give an instruction? Do you recall? I don't recall. But in Terman, the defendant testified he did not make the statement. He got on the scan and testified he did not make the statement. That's completely different than this case. Didn't they request that as well or no? Or was it a waiver and the evidence was closely bound? No, I thought that he got on the scan and testified he did not make the statement. And did they ask for the IPI? They did not. Oh, okay. All right. I don't know. There was some other issue. It was not solely an instruction error, but I can't recall. No, but again, important, they found the evidence in that case was closely balanced before going on and disregarding Sargent completely and making the statement that it was a fundamental right. Really, the fundamental right cases are very limited, very, very, very limited, and the absence of this bracket in language simply is not one of those cases. No, this is the case where the judge told the jury that reasonable doubt is something that you all can go back and decide in that little room. That's what this case was about. The primary issue was the error in a question where the jury said, we are really having a problem back here, judge. Give us a little help. What does reasonable doubt mean? So now I remember. There was more than one error, and the first error that the court addressed was the question about how the court answered the reasonable doubt instruction. Correct. Okay. Correct. Go on with your argument. I just couldn't recall what was in Thurman. There is absolutely no way that this defendant can overcome his forfeiture in this case. It is clear that he didn't even think that the bracketed language was necessary, as he didn't even request it himself. The evidence in this case was not closely balanced, and as Sargent dictates, this isn't a fundamental right. And, again, actually Sargent wasn't discussed because they were talking about a defendant's statement, not witnesses' statements. But, you know, the legislature, when they allowed for the introduction of these statements, specifically mandated what the instruction should say. And the mandate was that the jurors are to be told that they are to determine the weight to be given any  factors such as the person's age. I mean, there's other things as well. But language of the statute is tracked in the IPI, but the bracketed portion was not part of any mandate. Anyway, I don't know. I mean, I think the IPI instruction, when the jury is told twice that they're the sole arbiters of the weight to be given testimony, they can decide whether to either take it or reject it, take it in whole or take it in part, give whatever weight they want to it, or give no weight whatsoever. But, you know, maybe that's not the, you know. I mean, the bracketed portion certainly adds something to that. But in this situation, it actually doesn't add a whole lot because nobody is disputing that they made statements. It's a question of the memory of what those statements were. So, therefore, the bracketed is inapplicable, and it should only be considered for weight as to whether the memory was good or not. Anything you wish to add? Unless you have any other questions, we ask that you affirm the conviction. Thank you. Grant, words of rebuttal? Do you think that reasonable doubt thing was significant in Terman? Your Honor, it was significant, but there were two independent grounds for reversal and remand, and they were both instructional errors. So, in a way, it still involved solely instructional error. It just involved two separate errors. But Terman and Mitchell, the case that you did rely on, were both decided under that first prong of the plain error rule where the evidence is closely balanced? Your Honor, Terman was decided under both. And if this Court looks, I unfortunately do not recall the paragraph number, but it is in my reply brief, and I believe in the opening brief as well. Terman specifically found that it was error under this, that this, the error at issue in this case was error under the second prong of the plain error doctrine. The defendant did not request the instruction. The Court simply gave the instruction without the bracketed portion, just like it did here. And this Court in Terman found that it was a fundamental error that denied the defendant a fair trial. Okay. Your Honor, to read the bracketed portion as superfluous and to assume that the jury is properly instructed without it would read the bracketed portion out of the instruction. So what about Sargent when it says that we're not going to find a fundamental error when the whole instruction was not given? What do you, how do you respond to that? Your Honor, we can, the only thing really to say is that Sargent did not consider this matter. It did, there is broad language saying that the entire missing instruction in the context of that case was not a fundamental error. We would say that it was here and that Sargent should have considered, or Sargent never had the opportunity to consider whether it was relevant that the jury was not instructed that it was up to them to determine whether the statements were made. But even if there's... Did you see how they withdrew somewhat from the Mitchell decision in Sargent, the one case that you kind of relied on in addition to Terman? They pointed out that 115 hearing did not take place. And in this particular case, the jury wasn't left without any instruction because they had the 103. They did have 1.02, Your Honor. And they also, did they mention, was Mitchell under the, yeah, Mitchell was under the first prong. Mitchell was a closely balanced error. Terman was error under the second prong, Your Honor. And even if this court does not find plain error, it should find that error occurs when the bracketed portion is not given. Yeah, and that's different, though. I mean, I agree with you there. You can always say that if the bracketed portion suggests it should be given, the question, you know, then we decide, well, was this really contested at this hearing? Was there a contest about whether the statements were given or was it more about the passage of time? And was the defendant really suggesting that these statements weren't given? But that's that whole, that's an issue that, in my opinion, we don't really need to reach if we can't say that this is a fundamental right that so infected the entire trial proceedings as to deny the defendant a fair trial. I think that's, you know, that's really an issue here. And I don't know that Terman, Ethels, Richmond, or any of these other cases that are discussing whether the true issue was raised at the trial. That's kind of like a, you know, that's a side road. Your Honor, the first step in plain error analysis is to determine whether error occurred. And here it did. But I'm saying then you have to decide whether that error, whether that error amounted to the denial of a fundamental right so that it infected the entire trial proceedings. So if you can't say that when the Supreme Court has already said, you know, when the whole instruction is missing, we don't have this fundamental right under the second prong, that's what I'm talking about. This, whether or not it was contested, is like, yes, we could go into this whole discussion, but do we need to do that if we can't say that when it's all missing, it's not a fundamental right? At the very least, Your Honor, I think this Court should do so as to count one of the indictment against ML because that is the count we raised reasonable doubt on, and the evidence was very close as to that count. Well, now you can't really be arguing it was close now, can you? Your Honor, in our briefs we argued thoroughly that that count was very close. Well, you did argue that there wasn't evidence supporting it, but in your argument about the instructional error, you do not suggest the evidence was closely balanced, do you? Your Honor, there's not a separate argument that it was closely balanced. It's just issue one. Are you asking us now to consider it under the first prong without ever having briefed it and without ever having the State be allowed to respond? I mean, is that fair for these proceedings now? Your Honor, no. We would never raise that except for the fact that the State has thoroughly briefed, as have we, the fact that the evidence was very close on this point. Yes, I agree with you. But in terms of, you know, proceedings in order and everything else, you have raised this in the context of the second prong of the plain error, and I don't think it's fair to say now we should look at this under the first prong. I mean, that's really just totally not right. I'm not going to, I mean, if you're asking us to do that, we're certainly not going to do that now when you didn't raise it in the brief, and it's, you know, we're at oral argument. So I'm not going to be, I just don't think that's right for us to suddenly look at this under the first prong. I mean, I don't think that's appropriate. So I'm sorry, but that's, I would think that's totally unfair. Your Honors, if there are no further questions. We'll take the matter under advisement. Thank you, Your Honor. All right. And the briefs were well-argued and well-briefed. Thank you.